# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| DANA THOMAS MURPHY, ET AL. | CIV. ACTION NO. 07-864 |
| VERSUS | JUDGE ROBERT G. JAMES |
| FORD MOTOR COMPANY, INC., ET AL. | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court are several motions in limine filed by the parties. Plaintiff Dana Thomas Murphy ("Murphy") has filed a Motion in Limine to Exclude Evidence of Past Traffic or Seatbelt Violations [Doc. No. 45]. Defendant Ford Motor Company ("Ford") has filed an Omnibus Motion in Limine [Doc. No. 47], a Motion in Limine to Exclude Testimony of Plaintiffs' Expert Witness, Nicholas K. Mango [Doc. No. 48], a Motion in Limine to Exclude Plaintiffs' Evidence of Alternative Designs [Doc. No. 49], a Motion in Limine to Exclude Plaintiffs' BEI Static Deployment Air Bag Tests [Doc. No. 50], and a Motion in Limine to Strike Plaintiffs' Expert Witness, Matt Ivory [Doc. No. 75]. Ford has requested a hearing on all motions except its Motion in Limine regarding Ivory. The parties have filed memoranda in opposition to the motions in limine.

## I. Factual Background

Murphy brought this products liability action against Ford as a result of an April 25, 2006 car accident in Monroe, Louisiana. On that day, Murphy was traveling in a 1995 Ford Mustang with her three minor children. Two of the children, Madison J. Murphy ("Madison") and Taylor Dooley ("Taylor"), were properly restrained in the back seat. Murphy's other child, six-year-old Makenzie

1

Murphy ("Makenzie"), was riding in the front passenger seat and was not wearing a seat belt. Murphy alleges that she was temporarily lost in an unfamiliar neighborhood and mistakenly turned northbound onto Second Street, traveling on a one-way street in the wrong direction. She was involved in an accident near the intersection with Ouachita Avenue, causing the driver's side and front passenger air bags to deploy. Although Murphy's other children survived the accident, sadly, Makenzie was fatally injured and died two days later.

Murphy brought this lawsuit against Ford in her own name and own behalf of Makenzie and Madison.

## II.    Murphy's Motion in Limine to Exclude Evidence of Past Traffic or Seatbelt Violations

Pursuant to Federal Rules of Evidence 401 and 403,[1] Murphy moves the Court to exclude from evidence her past traffic violations, including a seat belt violation. She contends that her past traffic violations are irrelevant and prejudicial to her conduct on the date of the accident.

In response, Ford provides the Court with specific information about Murphy's past traffic violations. Murphy pled guilty on March 5, 2001, to a February 14, 2001 charge that she violated

---

[1]Rule 401 defines "'[r]elevant evidence' . . . [as] evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Rule 403 provides that:

[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

LA. REV. STAT. § 32:295 pertaining to "Child passenger restraint system." Additionally, approximately one year earlier, Murphy pled guilty to first offense DUI.

Ford agrees with Murphy that the traffic violations are prejudicial and admits that they may be irrelevant if Murphy and her witnesses testify truthfully about her past practice of child restraint usage and her knowledge of the risks related to allowing a child to ride unrestrained in the front passenger seat. However, citing Federal Rule of Evidence 608(b)[2], Ford contends that evidence of the traffic violations would be "necessary for impeachment and credibility purposes" if Murphy asserts at trial that she was a "fastidious and careful driver who religiously belted her children, and who (but for this single, momentary lapse in judgment) never took risks on the road." [Doc. No. 59, p. 4].

The Court agrees with Ford's analysis. Murphy's Motion in Limine [Doc. No. 45] is DENIED at this time. Prior to inquiring into such evidence during cross-examination or during its case-in-chief, Ford should request a sidebar. If Murphy wishes to re-urge her motion at that time, the Court will consider it based on the facts and testimony presented at trial.

---

[2]Federal Rule of Evidence 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
>
>   . . .

FED. R. EVID. 608(b).

**III.    Ford's Motions in Limine**

**A.    Omnibus Motion in Limine**

In its Omnibus Motion in Limine, Ford moves the Court to exclude from evidence several general items, each of which will be addressed in turn.

**1.    Any Reference to or Evidence, Testimony, or Argument Concerning Settlements, Verdicts or Judgments**

In response, Murphy objects generally to the vagueness of Ford's motion. However, Murphy agrees that it will not refer to settlements, verdicts or judgments, as long as she is permitted to refer to other accidents or incidents involving the 1995 Ford Mustang.

Ford's Omnibus Motion in Limine is GRANTED IN PART to the extent that Ford seeks to exclude any reference to or evidence, testimony, or argument concerning settlements, verdicts or judgments. To the extent Murphy seeks to introduce evidence or testimony regarding other accidents or incidents involving air bag deployment in the 1995 Ford Mustang, which have not been identified, the Court DEFERS ruling until trial. Murphy is cautioned, however, that if "evidence of other accidents or occurrences is offered for any purpose other than to show notice, the proponent of that evidence must show that the facts and circumstances of the other accidents or occurrences are 'closely similar' to the facts and circumstances at issue." *Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993) (citing *McGonigal v. Gearhart Industries, Inc.*, 851 F.2d 774, 778 (5th Cir. 1988); *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1082-83 (5th Cir. 1986)). If Murphy intends to introduce such evidence "solely to show notice," the admissibility standard is "relaxed[,]" but she "must [still] establish reasonable similarity." *Id.* at 580 (citing *Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 762 (5th Cir.1989)). Regardless of Murphy's showing, the Court retains the duty

to consider Rule 403 prior to making a decision whether to admit this type of evidence.

### 2. Any Reference to or Evidence, Testimony or Argument Concerning Other Unrelated Alleged Defects or Recalls

Ford also moves the Court to exclude as irrelevant evidence, testimony or argument concerning other unrelated alleged defects or recalls. Murphy responds that Ford has failed to identify what defects or recalls it contends are "unrelated" to this accident and that its motion is overreaching.

The Court has insufficient information to rule and thus DEFERS this part of Ford's motion until trial. However, the Court again cautions Murphy that any evidence, testimony, or argument concerning alleged defects or recalls of Ford products not at issue in this case must meet the standard set forth in *Johnson*.

### 3. Any Reference to or Evidence, Testimony, or Argument Concerning Documents Allegedly Not Produced by Ford

Ford next moves the Court to exclude any reference to or evidence, testimony, or argument concerning documents allegedly not produced by Ford unless Murphy filed a motion to compel and obtained a ruling. Murphy responds that the motion is vague and is not specific. Murphy contends that if Ford has failed to notify her of documents it refused to disclose in discovery then the Court "may inform the jury of the party's failure." Fed. R. Civ. P. 37(c)(1)(B).

The Court does not assume that Ford is attempting to avoid its discovery duties, but merely to foreclose Murphy from making improper allusions to documents Ford should have produced when those documents either did not exist or were subject to protections under the discovery rule. Generally, Ford's motion is GRANTED, and the Court will prohibit either party from making disparaging comments about the other party's failure to produce documents. However, if Murphy

has evidence that Ford improperly failed to produce documents or failed to provide Murphy with a log of documents subject to a privilege, then the Court will consider appropriate action when the information is presented to it.

**4.    Any Reference to or Evidence, Testimony or Argument Concerning Ford's State of Mind**

Ford moves the Court to exclude any reference to or evidence, testimony, or argument concerning Ford's state of mind through testimony from Murphy's witnesses.  Specifically, Ford contends that Murphy's witnesses cannot testify about the meaning or contents of Ford documents that are inadmissible or have not been admitted into evidence or that can be understood by the jury without expert assistance.  Without identifying the witnesses, Ford contends that Murphy's witnesses lack expert knowledge about Ford and its decision-making processes or its employees, testimony about documents not admitted or admissible violates the "best evidence" rule,[3] and the probative value of any testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and the considerations of undue delay.

In response, Murphy contends that the motion is vague and overbroad to the extent that Ford requests that it limit the testimony of Murphy's experts.  Murphy contends that its experts should be entitled to render their opinion as to the interpretation of the meaning or contents of Ford documents.  With regard to the best evidence rule, Murphy contends that the rule is inapplicable when the witness' testimony is based on first-hand knowledge of the event, not knowledge gained from the writing, and that the rule is also inapplicable if a document is used only to refresh a witness's

---

[3] Federal Rule of Evidence 1002 is known as the best evidence rule and provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress."

recollection. Finally, Murphy responds that Ford has failed to identify any basis for its Rule 403 argument.

The Court has not been provided with sufficient information to rule on Ford's general objection at this time.[4] This portion of its Omnibus Motion in Limine is DENIED, subject to re-urging at trial.

> **5.     Any Reference to or Evidence, Testimony, or Argument Asking the Jury Concerning the Absence or Identity of Ford's Corporate Representative**

Ford next moves the Court to prohibit Murphy from referring to the fact that Ford may not have a representative at trial or to Ford's choice of corporate representative. Murphy responds Defendants have cited no authority that would prevent her from referring to the absence of any specific Ford representative or to its choice of representative.

After a conference with counsel in chambers, Murphy's counsel have indicated that they do not intend to refer to the absence or choice of Ford's representative. Accordingly, this portion of Ford's Omnibus Motion in Limine is DENIED AS MOOT.

> **6.     Any Reference to or Evidence, Testimony or Argument Asking the Jury to "Send a Message" or Act as the "Conscience of the Community"**

Ford asks the Court to prevent Murphy's counsel from making remarks to the jury that it should "send a message" to Ford's boardroom or act as the "conscience of the community" or other like statements because these are improper factors in determining a compensatory award and improperly appeal to the jury's "'passion and prejudice.'" [Doc. No. 47-2, p. 5 (quoting *Honda v. Oberg*, 512 U.S. 415, 426 (1994)).

---

[4]The Court will address Ford's *Daubert* motion regarding Murphy's expert, Nicholas Mango separately.

In response, Murphy cites *Dixon v. International Harvester Co.*, 754 F.2d 573, 585-86 (5th Cir. 1985), for its holding that the district court did not err by allowing the plaintiff's counsel to remark that the jury "send a message" in another products liability case. Murphy further asserts that the Supreme Court's decision in *Honda* does not stand for the proposition that such remarks are inherently prejudicial and that the Fifth Circuit has instructed that "final arguments must be forceful," thus counsel are afforded "'reasonable latitude.'" *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 275-76 (quoting *Edwards v. Sears, Roebuck and Co.*, 512 F.2d 276, 283 (5th Cir. 1975)).

First, the Court notes that in *Dixon* the Fifth Circuit was asked to determine only if the district court committed plain error in light of the record as a whole since the opposing party failed to make a contemporaneous objection.[5] While an argument of counsel may not be grounds for a new trial after review by the appellate court, that is not the standard to which this Court strives. Additionally, Murphy is not entitled to recover punitive damages, and the Court finds that a jury might be confused about the basis of its award of damages. The Court expects counsel to argue forcefully the merits of their case, rather than inflaming the passions or prejudices of the jury, and is confident that the attorneys involved in this case can do so without the objected-to language. Accordingly, this portion of Ford's Omnibus Motion in Limine is GRANTED, and Murphy's counsel are prohibited from asking the jury to send a message or act as the conscience of the community. If Murphy's counsel anticipate making similar statements, counsel are required to obtain a ruling from the Court outside the presence of the jury.

---

[5]The opposing party did object to counsel's comment that the defendant was a "million dollar corporation," but not to the "send a message" comment. 754 F.2d at 585-86.

### 7. Any Reference to or Evidence, Testimony, or Argument Concerning Failure to Warn, Recall and/or Retrofit

Ford next moves the Court to exclude from evidence any reference to or evidence, testimony, or argument "suggesting that Ford had a duty, subsequent to the delivery of the vehicle in question," to notify, publicize to, or to warn purchasers or vehicle occupants of the "alleged need for an alternative design or other post-delivery modification, or that Ford had a post-sale duty to warn again, update its warnings, send consumer reminders, or issue a recall subsequent to delivery of the vehicle in question." [Doc. No. 47-2, pp. 5-6].

In response, Murphy contends that the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. 9:2800.51, et seq., does not limit its evidence. Murphy contends that it can refer to Ford's post-sale and/or post-delivery duties if Ford had knowledge of a dangerous or damaging characteristic of the 1995 Mustang. Additionally, Murphy points out that the Louisiana Supreme Court has held that a manufacturer has a duty to warn of any danger inherent in the use of the manufacturer's product which is not within the knowledge of the ordinary user and that the duty to warn is a continuing duty.

While Murphy has correctly stated the LPLA law, the Court cannot make a determination at this point as to whether Murphy will meet its initial burden of establishing that Ford had knowledge of a dangerous or damaging characteristic or of a danger inherent in the use of the product not known to the ordinary consumer. Additionally, it is unclear to the Court whether there is a failure to warn claim case, so any evidence about Ford's failure to warn may be irrelevant. Accordingly, the Court DEFERS ruling on this portion of Ford's motion until trial.

### 8. Any Reference to or Evidence, Testimony, or Argument Concerning Ford's Financial Condition or the Wealth of the Parties

Ford also requests that the Court prohibit Murphy from making reference to Ford's financial

condition or the relative wealth of the parties. Murphy responds that in *International Harvester* counsel was permitted to refer to the defendant as a "million dollar corporation" in the context of showing that it had the financial ability to make its product safer. Because the jury was instructed that punitive damages were not to be awarded, the Fifth Circuit determined that the defendant's substantial rights had not been impaired.

The Court agrees with Murphy's analysis of the statement of the defendant's financial condition in *International Harvester* and agrees that, under the facts of that case, such a statement did not impair the defendant's substantial right. However, it is also clear from the case that the district court found that it was necessary to explain that the case did not involve punitive damages, rather than excluding the remark entirely. It is again this Court's intention to have the jury rule on the substantive merits of the case without regard to the relative wealth of the parties. Indeed, Fifth Circuit Pattern Instruction 15.2 on compensatory damages provides that jurors should be guided by "dispassionate common sense," and Instruction 2.13 provides that jurors cannot "let bias, prejudice or sympathy play any part in your deliberations" because "a corporation and all other persons are equal before the law and must be treated as equals in a court of justice."

For these reasons, this portion of Ford's Omnibus Motion in Limine is GRANTED. If Murphy's counsel anticipate making a statement similar to that in *International Harvester*, which they believe is admissible for reasons other than to inflame the jury, they may request a ruling from the Court outside the presence of the jury.

> **9.      Any Reference to or Evidence, Testimony, or Argument Referring to "Victims"**

Ford also moves the Court to prohibit any reference to Plaintiffs as "victims." Ford suggests

that the term "victim" suggests criminal wrongdoing and only serves to inflame passion and sympathy. Murphy responds that there are no cases supporting Ford's arguments and that even in a case where the district judge referred to the plaintiff as a victim, the Fifth Circuit found no prejudicial error. *See Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 578-79 (5th Cir. 2001).

This portion of Ford's Omnibus Motion in Limine is GRANTED IN PART and DENIED IN PART. The Court finds that it could unduly prejudice or bias the jury for counsel to constantly refer to Murphy and her children as "victims" during direct and cross-examination or to intentionally elicit such testimony from witnesses. To this extent, Ford's motion is GRANTED. However, the Court will not prohibit counsel from referring to Murphy and her children as victims of a defect in Ford's product during its opening and closing arguments, nor will the Court hold counsel responsible for the unsolicited language choice of each witness. To this extent, Ford's motion is DENIED.

**B.      Motion in Limine to Exclude Testimony of Murphy's Expert Witness, Nicholas K. Mango**

Ford has also filed a *Daubert* motion seeking to have the testimony of Murphy's expert, Nicholas K. Mango ("Mango"), limited or excluded [Doc. No. 48].

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court set forth the role of the district courts as gatekeepers to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), extended the *Daubert* standard to all experts and expert testimony.

Under Federal Rule of Evidence 702, amended after the *Kumho* decision, an expert opinion on scientific, technical, or specialized knowledge can be admitted only if it (1) "[is] based upon

sufficient facts or data, (2) . . . [is] the product of reliable principles and methods, and (3) the witness applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

The *Daubert* Court provided an illustrative list of factors that courts may use when evaluating the reliability of such testimony. 509 U.S. at 592-93. These factors include, but are not limited to, whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of error or standards controlling its operation, and whether it is generally accepted in the relevant scientific community. *Id.* at 593-94. "[T]he Supreme Court emphasized that the *Daubert* analysis is a 'flexible' one, and that 'the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'. . . The district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (quoting *Kumho*, 526 U.S. at 150, 152).

"[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (internal quotations and citations omitted). "It is the role of the adversarial system, not the court, to highlight weak evidence[.]" *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

Murphy intends to present the testimony of Mango as an expert in statistics. Mango, who has a combined Bachelor's and Master's degree in engineering from the Massachusetts Institute of Technology, is a partner in a consulting firm. He is a member of the Institute of Mathematical Statistics, American Health Information Management Association, and Society of Automotive Engineers. Mango has taught a course for approximately ten (10) years to the Society of Automotive Engineers on "Accessing and Analyzing Crash and Injury Data from Online Databases"; the course is accredited by the Accreditation Commission for Traffic Accident Reconstruction and qualifies for continuing education credit from the International Association for Continuing Education and Training.

Ford does not contest Mango's qualifications as an expert in the field of statistics, and the Court finds him qualified to render an opinion in that field. However, Ford does contest Mango's testimony in this case as irrelevant and unreliable. Thus, the Court must address the remaining parts of the *Daubert* analysis.

At the request of Murphy's counsel, Mango prepared a statistical study assessing the "relative risk" of an air bag-caused fatality or near-fatality to child occupants in the front passenger seat of 1994 and 1995 model year Mustang coupes with V6 engines. Mango compared the actual rate of harm from incidents in the 1994 and 1995 V6 Mustangs to the actual rate of harm from such incidents in the Medium Passenger Car Group ("MPCG") of the "New Car Assessment Program." The New Car Assessment Program is the star crash rating system established by the National Highway Traffic Safety Administration ("NHTSA"), and Ford Mustangs are included in the MPCG for that rating system. Mango included in the comparison MPCG peer group 1994 and 1995 Mustangs with a V8 engine and all 1996 and 1997 Mustangs. After reviewing the data, Mango

found that the 1994 and 1995 V6 Mustangs were nine times more likely to have a fatal or near-fatal air bag-related injury to front passengers in low-to-moderate speed collisions than the vehicles in the comparison group. Mango found that children in the front passenger seat were thirteen times more likely to suffer a fatal or near-fatal air bag-related injury in low-to-moderate speed collisions in the 1994 and 1995 V6 Mustangs than in the comparison group.

Ford moves the Court to exclude or limit Mango's testimony for the following reasons:

(1)    Mango's testimony was formulated solely for the purposes of this litigation;

(2)    Mango's opinions are untested and have not been subjected to the scrutiny of peer review;

(3)    Mango failed to filter his statistical data to exclude fatalities or near fatalities which were clearly not the result of a potential problem with the air bag system;

(4)    Mango failed to provide one-on-one comparisons with other vehicles, rather than comparing the 1994 and 1995 V6 Mustangs to other vehicles as a group;

(5)    Mango improperly relied on evidence of other incidents which are irrelevant to this litigation (i.e., without information that the other incidents were substantially similar) and would result in undue prejudice to Ford; and

(6)    Mango's testimony on "relative risk" is not relevant under the LPLA.

Ford focuses particularly on Mango's methodology and points out that in *Vasquez v. Hyundai Motor Co.*, Mango was excluded by Texas state court from testifying in a similar case using the same type of methodology and that, applying an abuse of discretion standard, the appellate court affirmed the trial court's ruling. *See Vasquez v. Hyundai Motor Co.*, No. 04-01-00554-CV, 2002 Tex. App. Lexis 6025 (Tex. Ct. App. Aug. 21, 2002).

In response, Murphy points to Mango's significant experience and qualifications, as well as the acceptance in the scientific community of Mango's methodology in evaluating relative risk.

First, with regard to *Vasquez*, Murphy correctly points out that this unpublished appellate court decision was later withdrawn. The Texas appellate court, acting *en banc*, granted Vasquez's motion for reconsideration, withdrew the panel opinion and judgment issued August 21, 2002, and substituted an opinion which reversed the trial court and remanded for a new trial on other grounds without addressing the exclusion of Mango's testimony. *Vasquez v. Hyundai Motor Co.*, 119 S.W.3d 848 (Tex. Ct. App. 2003). Additionally, Murphy points out that *Vasquez* was decided prior to the presentation by Mango and his partner, Elizabeth Garthe ("Garthe"), of two papers to the 7th World Conference on Injury Prevention and Safety Promotion in 2004, entitled "Comparison of Aggregate and Vehicle Specific Passenger Side Frontal Airbag Fatality Risks" and "A Method to Study Air Bag-Related [sic] Eye Injuries." The conference was primarily sponsored by NHTSA and in both papers, Mango and Garthe used NHTSA's data and peer-group-based relative risk analysis. In the first paper, Mango employed the very same methodology he used in *Vasquez* and, in the second paper, Mango used methodology he employed in the Nissan Altima air bag defect recall. Mango's methodology used in the Nissan Altima air bag defect recall was very similar to that used by the NHTSA in its closing report. [Doc. No. 76, Exh. D]. Murphy also points out that Mango was later accepted as an expert and allowed to testify as to relative risk in an Alabama state court against Ford in a case also involving a 1994-95 Mustang coupe. [Doc. No. 76, Exh. H]. Finally, Murphy points out that relative risk has been employed as a valid statistical measure by the Federal Judicial Center in its *Reference Manual on Scientific Evidence*, 2nd Ed. Federal Judicial Center 2000 and by the NHTSA's National Center for Statistics & Analysis in its May 2004 Technical Report, entitled "Analysis of Crash Involving 15 Passenger Van." [Doc. No. 76, Exh. C].

The Court has carefully considered the well-reasoned arguments of both counsel, but finds

that Murphy has met her burden of establishing that Mango's testimony is sufficiently reliable and relevant to meet the requirements of *Daubert* and Rule 706. Specifically, the Court finds that Mango's methodology has been subjected to peer review, relies on information provided by the NHTSA, and has been generally accepted in the community of experts of which he is a member. The areas of attack identified by Ford, including Mango's status as a "hired gun," his failure to exclude other reasons for the deaths and near deaths, and his use of a peer group as one comparator (including other Ford Mustangs which had the same air bag system), can all be attacked at trial, and Mango has provided underlying data, his expert report, and a deposition, so that counsel will be prepared to vigorously cross examine Mango, as well as attack his methods and conclusions through its own expert testimony. Moreover, as Murphy points out, relative risk analysis is at least relevant to a determination under the LPLA whether Ford's air bag system was unreasonably dangerous in design. *See Kampen v. American Isuzu Motors, Inc.*, 157 F.3d 306, (5th Cir. 1998) ("[F]oreseeability of the risk of harm is properly taken into consideration under other elements of the plaintiff's case, such as proximate cause . . . and design defect . . . .") (citing LA. REV. STAT. ANN. § 9:2800.54(A) (A manufacturer is only liable for "damages proximately caused by a characteristic of the product that renders the product unreasonably dangerous . . ." ) (other citation omitted)).

Ford's Motion in Limine to Exclude Testimony of Murphy's Expert Witness, Nicholas K. Mango [Doc. No. 48] is DENIED.

### C. Motion in Limine to Exclude Murphy's BEI Static Deployment Air Bag Tests and Motion in Limine to Strike Murphy's Expert Witness, Matt Ivory

Ford also moves the Court to exclude the Biodynamics Engineering, Inc. ("BEI") Air Bag Static Deployment Tests performed at the direction of Murphy's counsel. [Doc. No. 50]. BEI

performed three static (non-moving) tests on a 2004 Mustang and two static tests on a 1995 Mustang to "[d]etermine the deployment shape, extent of travel, and deployment consistency of 1995 Ford Mustang passenger-side [air bags], and how the deployments affect a Hybrid III 6 year-old child dummy placed in close proximity to the [air bag] module." [Doc. No. 50, Exh. A, p. 2]. During the performance of the tests, the vehicles were placed on jack stands in fixed positions, and the front passenger seat was placed in the fully reclined position. [Doc. No. 50, Exh. A, pp. 2-3]. In the tests on the 1995 Mustang, the front door and rear window were removed for visualization. [Doc. No. 50, Exh. A, p. 2].

BEI's report is not signed by any of the engineers who performed the test or analyzed the data. None of the tests were performed at the request of Murphy's experts, although Murphy's biomechanist, Robert Anderson ("Anderson"), did describe in a telephone call with Murphy's counsel what position "would be the most beneficial to have the dummy in." [Doc. No. 50, Exh. C, Anderson Depo., pp. 72-74].

Ford argues that these BEI tests, report, and videotape should be excluded from evidence because they are not substantially similar to the subject accident, and Murphy cannot lay a proper foundation for their admission. In part, Ford argues that Murphy has not identified an expert from BEI to provide the foundation.

However, in response, Murphy stated that Matt Ivory, an expert it identified on December 29, 2008, would provide the foundation. Murphy also argues that Ford's own expert, Dr. James Benedict ("Benedict") "has done extensive out-of-position child static dummy PAB testing for many years and presented it to juries," that NHTSA also uses static testing, and that Benedict has reviewed the tests and did not find that they were performed in an inappropriate way. [Doc. No. 70, p. 2].

Murphy argues further that the tests were substantially similar and that Benedict generally agrees with how the tests were performed, although he would have raised the dummy's chin by 1-2 inches.

Six days after Murphy's response was filed, Ford filed its Motion to Strike Ivory from testifying on the bases that he was not timely disclosed, he did not submit an expert report, he was not made available for a deposition, and, if the Court allows him to testify, Ford would suffer a substantial injustice. Murphy responds that Ivory was correctly disclosed as a witness with knowledge of the BEI tests and that he will testify only as a lay fact witness, not as an expert.

Because Ivory is necessary to lay the foundation for the admission of the BEI tests, report, and videotape, the Court will first address Ford's Motion to Strike his testimony. Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A), the parties have a duty to disclose the name and, if known, the address and telephone number "of each individual likely to have discoverable information–along with the subjects of that information–that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A).

Additionally, in the Court's Scheduling Order, certain deadlines are set for the parties to exchange witness lists. This case was originally filed in state court in April 2007 and has been in this Court since May 2007. However, the parties have requested and received several continuances. As a result, the last complete Scheduling Order, issued on April 15, 2008, required Murphy to provide Ford with a list of her may call witnesses by October 24, 2008. [Doc. No. 24]. Murphy did not identify Ivory as a witness at that time and did not request an extension of time.

On December 29, 2008, Murphy provided Ford with a First Supplement to Rule 26 Disclosures identifying Ivory as a "knowledgeable person" with regard to the BEI testing, but Murphy did not supplement its previously disclosed witness list or otherwise indicate that Ivory

would be testifying at trial. Murphy did not disclose Ivory as a fact witness until August 10, 2009, during preparation of the pre-trial order, and the day before she filed her opposition to Ford's motion to exclude the BEI testing.

Upon review, the Court finds that, while Ivory was not disclosed as a trial witness until August 10, 2009, Ford was aware that he had knowledge of the BEI testing since December 2008. Further, Ford's arguments all revolve around Ivory's testimony as an expert. Murphy is clear that Ivory will testify only as a fact and lay witness. Accordingly, the Court finds that Ford would not be prejudiced by Ivory's testimony in this case as a fact witness, if his testimony is so limited, and its Motion to Strike Ivory [Doc. No. 75] on the basis of Murphy's non-disclosure is DENIED.

The Court now turns to whether the BEI tests, report, and videotape are admissible. Murphy asserts that the issue of foundation has been resolved because Ivory can offer the fact testimony necessary. However, Murphy is now attempting to offer specific scientific/mechanical tests showing the "deployment shape, extent of travel, and deployment consistency of 1995 Ford Mustang passenger-side [air bags], and how the deployments affect a Hybrid III 6 year-old child dummy placed in close proximity to the [air bag] module" without providing an expert from BEI to explain how the tests are interpreted, the results obtained, and how and why there are differences between the facts of this particular accident and the setup of the test. While Ivory may well be able to testify factually about how the tests are conducted, who conducts the tests, what the results were, these tests could only be helpful to the jury either as an alleged re-enactment or a demonstrative aid to understand an expert's testimony.[6] In other words, the tests, videotape and report are helpful to the

---

[6]The Court finds it highly doubtful that Ivory's testimony will be that of a "lay" person. Instead, it is very likely that his testimony will refer to "scientific, technical, or other specialized knowledge" and will at least veer into the expert arena. See Fed. R. Evid. 702.

jury only if they are accompanied by expert testimony. As Murphy admits that Ivory cannot testify as an expert, none of the tests were requested by Murphy's experts, none of her experts conducted the tests, and none were present at the test, the Court finds that the tests are irrelevant and inadmissible.

Moreover, even if Murphy could use the testimony of Ford's own expert, Dr. Benedict and her biomechanic, Anderson, the Court finds that the tests were not substantially similar to the accident. *See Barnes v. General Motors Corp.*, 547 F.2d 275 (5th Cir. 1977). While it is not necessary for Murphy to reproduce every factor at the time of the accident, it is necessary that the conditions be reproduced "in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed." *Id*. at 277. In this case, there are two significant differences: the tests were static, and the seat was laid back. The fact that Ford or any other manufacturer uses such tests in the industry does not mean that they should be admissible in a trial under the particular rules of evidence at issue.

Finally, the Court has serious concerns that the jury would give undue weight or consideration to a demonstrative video of Murphy's theory on the defective design of the air bags.[7]

Ford's Motion in Limine to Exclude the BEI Air Bag Static Deployment Tests [Doc. No. 50] is GRANTED, and all evidence of these tests, the report, and the videotape are excluded from

---

[7]Even if Murphy were offering the tests and videotape merely as a demonstrative aid during the testimony of Anderson, such an aid cannot be misleading to the jury. *See Muth v. Ford*, 461 F.3d 557, 566 (5th Cir. 2006) (Demonstrative evidence offered as a reenactment of disputed events must be substantially similar; demonstrative evidence offered as an illustration of general scientific principles need not be substantially similar, but must not be misleading.).

evidence.[8]

### D.  Motion in Limine to Exclude Murphy's Evidence of Alternative Designs

Finally, the Court turns to Ford's Motion in Limine to Exclude Murphy's Evidence of Alternative Designs.  [Doc. No. 49].  Ford contends that Murphy is unable to support her claim that there was an alternative design available at the time the 1995 Ford Mustang was manufactured because she points only to design concepts and prototypes, which are not truly alternatives.

> To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous'; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else."  *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 260–61 (5th Cir. 2002) (citing LA. REV. STAT. § 9:2800.54(A)).  "If a plaintiff's damages did not arise from a reasonably anticipated use of the product, then the 'unreasonably dangerous' question need not be reached."

*Kampen,* 157 F.3d at 309.  The plaintiff bears the burden of proof on the foregoing elements by a preponderance of the evidence.  LA. REV. STAT. § 9:2800.54(D).  "The existence of each of these elements is a question of fact or of mixed fact and policy to be decided by the [factfinder] based upon the evidence and circumstances presented by the particular case."  *Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326, 332 (5th Cir. 2001).

If a plaintiff proceeds under a design defect theory, then she must show that "[t]he likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse

---

[8]Given the Court's Ruling on Ford's Motion in Limine to Exclude Plaintiffs' BEI Static Deployment Air Bag Tests, it appears that Ivory's testimony is irrelevant and will be excluded from trial.

effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product." LA. REV. STAT. § 9:2800.56(2).

Inherent in Murphy's burden is to show that there was any alternative available to the air bag system at the time of the manufacture of the 1995 Ford Mustang. *See, e.g., Seither v. Winnebago Indus., Inc.,* No. 2002-CA-2091 (La. 4 App. 7/2/03); 853 So.2d 37, 41 ("We find that there was no valid alternative design presented. [Plaintiff's expert] presented merely a concept that was untested, unengineered, and not presented to the jury in any fashion more than mere speculation."); *Jaeger v. Automotive Cas. Ins. Co.*, No. 95-CA-2448 (La. 4. App. 10/9/96); 682 So.2d 292, 298 ("The assertion that European seat belts lack tension eliminators [the allegedly dangerous characteristic of the defendant's seat belt] is insufficient to establish that a feasible alternative design existed at the time the product left the manufacturer's control that would have prevented the plaintiff's injury. Plaintiff's expert did not disassemble the seat belt to evaluate the mechanism or describe any defect in design.").

However, Murphy asserts that the evidence will show that alternatives were feasible, and that she is not required to show that the alternatives were physically operating in a Mustang at the time of the manufacture of the 1995 Ford Mustang. She points to actual production vehicles with dual stage air bag inflation systems that were sold to the public in the 1970s and argues that in the 1980s and early 1990s there were designs for newer, better dual stage air bag systems.

As Murphy points out, Ford's Motion in Limine regarding the alternative design is, in fact, a motion for summary judgment. If the Court grants this motion, Murphy cannot prevail on her

design defect claim, and Ford will be entitled to judgment as a matter of law. The Court issues scheduling orders with dispositive motion deadlines well ahead of trial in order to prevent being faced with the dilemma it faces here. The Court finds that Murphy has presented sufficient evidence to proceed with its alternative design evidence at this time, and Ford's Motion in Limine to Exclude Murphy's Evidence of Alternative Designs [Doc. No. 49] is DENIED at this time. Ford may re-urge its motion at the close of Murphy's case.

## IV.    CONCLUSION

For the reasons set forth above, Murphy's Motion in Limine to Exclude Evidence of Past Traffic or Seatbelt Violations [Doc. No. 45] is DENIED at this time. Prior to inquiring into such evidence during cross-examination or during its case-in-chief, Ford should request a sidebar. If Murphy wishes to re-urge her motion at that time, the Court will consider it based on the facts and testimony presented at trial.

Ford's Omnibus Motion in Limine [Doc. No. 47] is GRANTED IN PART and DENIED IN PART, as set forth above.

Ford's Motion in Limine to Exclude Testimony of Plaintiffs' Expert Witness, Nicholas K. Mango [Doc. No. 48] is DENIED.

Ford's Motion in Limine to Exclude Plaintiffs' Evidence of Alternative Designs [Doc. No. 49] is DENIED at this time, subject to Ford's right to re-urge the motion at the close of Murphy's evidence.

Ford's Motion in Limine to Exclude Plaintiffs' BEI Static Deployment Air Bag Tests [Doc. No. 50] is GRANTED.

Ford's Motion in Limine to Strike Plaintiffs' Expert Witness, Matt Ivory [Doc. No. 75] is

DENIED to the extent that Ivory's testimony is a fact witness is relevant in light of the Court's other Rulings.

Finally, to the extent that the parties requested hearings on the above-referenced motions, the requests for hearing are DENIED, subject to the parties' right to re-urge the requests prior to or during trial, outside the presence of the jury.

MONROE, LOUISIANA, this 11th day of September, 2009.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE